1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND BAILEY, | Case No. 1:23-cv-01631-EPG (PC) |
| Plaintiff, | ORDER TO ASSIGN A DISTRICT JUDGE |
| v. | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER |
| R. MEJIA, et al., | |
| Defendants. | |
| | (ECF Nos. 1, 9). |
| | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Raymond Bailey is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 7). Plaintiff filed his complaint on November 21, 2023, alleging that six prison correctional officers violated his constitutional rights by not assuring his safety and not attending to his medical needs.

On January 22, 2024, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 9). The Court gave Plaintiff thirty days to file an amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 10). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.*).

The thirty-day deadline has passed, and Plaintiff has not filed an amended complaint or

1

otherwise responded to the Court's order. Accordingly, for the reasons below, the Court will recommend that Plaintiff's case be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff is incarcerated at the California Substance Abuse Treatment Facility (CSATF) in Corcoran, California, and alleges that the incidents at issue happened in Corcoran. He sues the

following six CSATF correctional officers: (1) R. Mejia; (2) J. Martinez; (3) D. Hicks; (4) J. Caballos[1]; (5) Pelafox; and (6) Wilson. Plaintiff brings three claims:

For his first claim, Plaintiff alleges "cruel and unusual punishment – negligence."[2] Plaintiff states that, on an unidentified date, he was trying to use the restroom on the B-Facility Yard and his "wheel got stuck in the gutter around the sidewalk leading to the urinal," which caused him to fall and land on his side. Defendants Mejia, Martinez, Wilson, and an unknown correctional officer, sat across the Yard in front of B-3 and never once activated their emergency devices. Plaintiff "laid on the concrete for a few moments" and two inmates asked if he wanted assistance since no one had come to his aid. Plaintiff asked for assistance, and they "rolled" him to the nurse's office. A nurse, who is not listed as a defendant in this case, said that she saw no evidence that Plaintiff had fallen and told him to leave. The nurse did not test or check his vitals. Upon passing the officers, not one of them asked about his wellbeing. Plaintiff generally indicates that his back and shoulders were injured.

For his second claim, Plaintiff alleges "cruel and unusual punishment (right to safety) – negligence." Plaintiff states that, on an unidentified date, he was "rolling back from getting [his] medication" and his "walker wheel got caught on a huge bulge in the blacktop in from of 1 Block." His walker fell backwards with him on it, and he hit his head on the blacktop and blacked out. While he was "down and out" his "chair was still underneath [him]." Defendant Pelafox, who is not a medical professional, "snatched the chair" from under his lower torso, and Plaintiff's legs hit the ground and a sharp pain ran through his back. At some point, the alarm was activated, an ambulance arrived, and Plaintiff ended up in the hospital.

For his third claim, Plaintiff alleges "cruel and unusual punishment – negligence – right to safety." Plaintiff states that, on September 2 of an unidentified year, he was leaving the hospital and was placed in a transportation van that did not have a lift for his walker. He asked Defendants Hicks and Caballos to call for a transport that had a lift for his walker. The officers ordered him to get in the transport vehicle and said that "they got me," which Plaintiff took to mean that they

---

[1] Plaintiff alternatively refers to this Defendant as "Caballos" and "Cabellos." The Court uses "Caballos" for consistency.

[2] For readability, minor alterations, such as correcting misspellings and altering capitalization, have been made to Plaintiff's complaint without identifying each change.

3

would help him. Both of the officers lifted him into the vehicle, with Plaintiff being shackled around his ankles and waist. Plaintiff asked to be unshackled, but was again told, "we got you." As Plaintiff stepped out of the vehicle, Defendant Caballos held his walker stable while Hicks was supposed to assist Plaintiff in getting down. Plaintiff's knees went out and he began to fall. Hicks stepped out of the way and allowed Plaintiff to fall. Plaintiff was 67 years old, with both knees "blown," and weighed close to 400 lbs. All of his weight landed on the walker, bruising his ribs and damaging other joints in addition to his pre-existing injuries.

Plaintiff asks for unspecified monetary damages and "medical support" in his request for relief.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v.*

4

*Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B.     Deliberate Indifference**

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. While Plaintiff's claims differ somewhat, each alleges that Defendants were deliberately indifference to some substantial risk of serious harm to him in violation of the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974, 128 L. Ed. 2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

Two requirements must be met to show an Eighth Amendment violation. *Id.* at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for purposes of this case, "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. "The circumstances, nature, and duration of [the Eighth Amendment claim] must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish deliberate indifference. *Farmer*, 511 U.S. at 835.

For the reasons explained below, Plaintiff has failed to state any cognizable deliberate indifference claim.

The Court begins its analysis with Plaintiff's first claim—that after falling due to his wheel getting stuck, Defendants Mejia and Martinez did not activate their emergency devices or inquire about his wellbeing. As to the first prong, while Plaintiff generally states that he had an "injury to [his] back [and] shoulders," he does not indicate that this injury arose from staying on the ground, rather than from the fall itself, which was not due to Defendants' failure to assist him.

As to the second prong, while Plaintiff states that Defendants Mejia and Martinez were across the yard when he fell, he does not allege facts that they observed the incident, let alone that they were subjectively aware of a serious risk to harm but disregarded the risk. Rather, according to Plaintiff, just "a few moments" after he fell, two inmates came to his aid and took him to the nurse's office.

The Court turns to Plaintiff's second claim—that he fell after his walker wheel got caught on a bulge in the blacktop and that Defendant Pelafox, who is not a medical professional, improperly removed "the chair" from under him causing Plaintiff a sharp pain in his back. However, Plaintiff does not allege that Defendant Pelafox knew of the bulge or fail to correct it. Even if Plaintiff did make such allegations, there is no evidence that the bulge in the blacktop was left their intentionally, rather than due to some negligence on the part of prison officials (which is discussed further below).

Likewise, as to the allegation that Pelafox improperly removed the chair from under Plaintiff, causing him back pain after his legs hit the ground, there is nothing to indicate that these circumstances rise to the level of deliberate indifference. Even assuming that Plaintiff's injury was sufficiently serious, there is nothing to show that Pelafox would have recognized an excessive risk to Plaintiff's health by removing the chair from under him or that he disregarded any risk to Plaintiff's health by removing the chair in a wanton manner. Rather, the fact that Plaintiff fell and Pelafox then removed the chair from under him, along with Plaintiff being transported to the hospital thereafter, indicates that Pelafox was attempting to help Plaintiff, albeit potentially in a negligent way. However, negligence does not rise to the level of deliberate indifference.

The Court turns to Plaintiff's third and final claim—that he fell after Defendants Hicks and Caballos failed to get him a van with a lift for his walker. Beginning with the first prong, while Plaintiff generally indicates that he bruised his ribs and damaged his joints, he does not allege facts to indicate that such injuries were sufficiently serious. *See Vilchis v. City of Bakersfield*, No. 1:10-CV-00893 LJO, 2012 WL 113747, at *12 (E.D. Cal. Jan. 13, 2012) ("Even assuming the truth of Plaintiff's assertions that he had visible injuries to the head and face, the evidence in the record describes those injuries to be abrasions and contusions, with some associated bleeding. This does not rise to the level of a 'serious medical need,' for purposes of the Eighth Amendment.").

As for the second prong, there is nothing to indicate that either Hicks or Caballos recognized and then disregarded an excessive risk to Plaintiff by not obtaining a van with a lift. Rather, by Plaintiff's telling, both Defendants attempted to help him out of the vehicle. Caballos

held Plaintiff's walker while Plaintiff got out. While Plaintiff claims that Hicks allowed him to fall by stepping out of the way after Plaintiff's knees gave out, there is nothing to indicate that Hicks failed to prevent the fall in a manner amounting to deliberate indifference.

In short, Plaintiff has failed to state a claim upon which relief may be granted.

**C.     Negligence**

Plaintiff also appears to allege independent claims for negligence under California law. However, even if Defendants might have acted negligently in violation of state law, this is a Federal court and the § 1983 lawsuit that Plaintiff has filed applies to violations of Federal law.

If Plaintiff has a constitutional claim, the Court may agree to include related state law claims. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.'" *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (quoting *Gilder v. PGA Tour, Inc*., 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc*., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, Plaintiff has not stated a cognizable federal claim. Accordingly, the Court does not have jurisdiction over any state law claims.

Moreover, a plaintiff can sue a California government employee for a tort claim, such as negligence, only if the plaintiff complies with California's Government Claims Act. Under this Act, prior to bringing a tort claim (such as negligence) against a public entity or its employees, the claim must have been presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrued. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of

inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's incarcerated status, it appears that monetary sanctions are of little use. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this factor weighs against dismissal. *Id.*

After weighing the factors, the Court finds that dismissal is appropriate.

**V.     CONCLUSION, ORDER, AND RECOMMENDATIONS**

Based on the forgoing, IT IS ORDERED that the Clerk of Court shall assign a District Judge to this case.

Further, IT IS RECOMMENDED as follows:

1.      This action be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order; and

2.      The assigned District Judge dismiss Plaintiff's § 1983 claims with prejudice.

3.      The assigned District Judge dismiss any state law claims without prejudice.

4.      The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 7, 2024**__   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE