UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND BAILEY,<br><br>Plaintiff,<br><br>v.<br><br>R. MEJIA, et al.,<br><br>Defendants. | Case No. 1:23-cv-01631-JLT-EPG (PC)<br><br>ORDER TO ADD DEFENDANTS (1) WARDEN PHILLIPS, (2) NURSE CORTEZ, AND (3) JANE DOE NURSE TO THE DOCKET<br><br>ORDER VACATING MARCH 7, 2024 FINDINGS AND RECOMMENDATIONS<br><br>(ECF No. 11).<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITHOUT FURTHER LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 12).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Raymond Bailey is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 7). Plaintiff filed his initial complaint on November 21, 2023, alleging that six prison correctional officers violated his constitutional rights by not assuring his safety and not attending to his medical needs.

On January 22, 2024, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims because he failed to allege sufficient facts demonstrating that any Defendant was deliberately indifferent to his serious medical needs. (ECF No. 9). However, the Court advised Plaintiff of the applicable legal standards and gave him thirty days to file an amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 10).

And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.*).

After the thirty-day deadline passed with no response from Plaintiff, the Court issued findings and recommendations on March 7, 2024, recommending that Plaintiff's case be dismissed for failure to state a claim, failure to prosecute, and failure to comply with a court order. (ECF No. 11). However, on March 11, 2024, the Court received an amended complaint from Plaintiff. (ECF No. 12). And on April 8, 2024, the Court received objections to the findings and recommendations, which generally blamed delays within the prison mail system for Plaintiff's failure to file his first amended complaint sooner. (ECF No. 13).

In light of Plaintiff's filing of an amended complaint, the Court will vacate its prior findings and recommendations and will screen the amended complaint. However, Plaintiff is warned that failure to timely comply with the Court's orders in the future may result in sanctions, including the dismissal of this case.

Upon review, the Court will recommend that Plaintiff's amended complaint be dismissed without further leave to amend for failure to state a claim.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner raises claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2). Because Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915, which requires a court to dismiss a case if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915(e)(2)(B)(i-iii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

**II. ALLEGATIONS IN THE AMENDED COMPLAINT**

Plaintiff is incarcerated at the California Substance Abuse Treatment Facility (CSATF) in Corcoran, California, and alleges that the incidents at issue happened in Corcoran. He names the following Defendants in his amended complaint: (1) Correctional Officer R. Mejia; (2) Correctional Officer J. Martinez; (3) Correctional Officer D. Hicks; (4) Correctional Officer J. Cabellos; (5) Correctional Officer Pelafox; (6) CSATF Warden Phillips; (7) Nurse Cortez; (8) Nurse Jane Doe; and (9) B. Wilson.[1] Plaintiff brings five claims:

For his first claim, Plaintiff states that on September 4, 2022, while trying to roll his "mobility impaired walker" to the urinal on the yard, his "wheel got stuck in a small ditch or gutter" next to the sidewalk. This area is supposed to accommodate "ADA inmate walkers or wheelchairs" and Plaintiff should be afforded the same opportunities as other inmates.[2] The prison started to retrofit the yard a long time ago but left such "hazards to exist." Plaintiff fell and injured his shoulder, laying on the ground for a significant amount of time waiting for staff to activate their emergency response devices, but they never did. However, two inmates helped Plaintiff by taking him "to medical." Defendants Mejia, Martinez, and Wilson knew that Plaintiff fell and "acted with deliberate indifference by allowing [him] to lay on the ground without activating their emergency activation devices." Plaintiff alleges that Defendant Warden Phillips

[1] Plaintiff listed B. Wilson in the caption of his complaint but not the section of the form designated for identifying Defendants.

[2] For readability, minor alterations, such correcting misspellings, have been made to Plaintiff's complaint without identifying each change.

has failed to make the prison safe for ADA inmates.

For his second claim, Plaintiff states that on September 9 of an unidentified year, his "walker got caught on a large bulge in the blacktop in front of Building 1." Warden Phillips was aware of complaints and work orders to have the institution retrofitted to house ADA inmates safely by giving them access to all areas afforded to the rest of the inmate population. Plaintiff suffered a significant injury to his head and back, being "knocked out cold laying on the blacktop." Defendant Pelafox, "being a corrections officer and not a trained medical staff should have been the officer to activate his emergency device and not take it upon himself to remove [his] walker from [his] lower torso," which reckless action caused Plaintiff enough pain to awaken him from his "state of unconsciousness." A different officer activated his device and Plaintiff was put in an ambulance and rushed to the hospital. The bulge "was a left-over hazard of the retrofitting of the track years ago" and there were no ADA warning signs about this danger.

For his third claim, Plaintiff alleges that, on September 2, 2022, as he was leaving the hospital, he was placed in a vehicle that did not have "the necessary safety ramp to accommodate [his] walker." Defendant Hicks ignored Plaintiff's requests for a vehicle that could accommodate his walker. Plaintiff hesitated to get in the vehicle due to being shackled at his ankles as well as a waist chain but was given a direct order to get in the vehicle with officers saying, "they got [Plaintiff]." Plaintiff was assisted into the vehicle without any apparent incident. However, as he later exited the vehicle, he asked to have his ankle shackles removed, but the officers, mostly Hicks, again said, "We got you." As Plaintiff was trying to step down, the ankle shackles were not long enough to reach the ground, and Plaintiff began to fall. Defendant Hicks loosened his grip on Plaintiffs arm and stepped back so that Plaintiff would fall away from him. Officer Cabellos stood in front of Plaintiff, holding his walker steady, and Plaintiff fell on top of the walker, causing him additional pain and injury. Had the officers followed "protocol" when transporting an ADA inmate, this incident would not have happened. This behavior was discriminatory because Plaintiff "was treated like an abled body person when [he] is not."

For his fourth claim, Plaintiff references his fall on the yard discussed in his first claim.[3]

---

[3] Plaintiff identifies September 2, 2022, as the day of the fall in his fourth claim. However, in his first claim, he states that this fall happened on September 4, 2022. Ultimately, for screening purposes, the Court does not find this discrepancy material.

He states that, after inmates took him to the medical office where Defendant Nurse Cortez was on duty, she said, "I see one lil grass stain on your pants but I see no evidence that you fell, leave." She filed no report and took no statement from Plaintiff as to what happened.

For his fifth claim, Plaintiff states that on September 2, 2022, after being dropped by Defendants Hicks and Cabellos as discussed in his third claim, he was taken to Nurse Jane Doe at T.T.A.[4] She asked if he could move his arm and he replied, "No." Nurse Jane Doe said it was because he did not want to and she sent him back to the yard, thus denying him medical attention.

Plaintiff indicates that his five claims are brought under the Americans with Disabilities Act (ADA), the Eighth Amendment, or both. He seeks unspecified monetary damages and "future medical care" in his request for relief.

## III. ANALYSIS OF PLAINTIFF'S COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he

---

[4] Elsewhere in the complaint, Plaintiff identifies "T.T.A." as a medical facility off the yard but part of the prison system.

does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the

constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

**B. ADA**

**1. Legal standards**

Plaintiff's factual allegations are largely unchanged from his initial complaint. However, he adds new legal claims under the ADA.

"The ADA contains five titles: Employment (Title I), Public Services (Title II), Public Accommodations and Services Operated by Private Entities (Title III), Telecommunications (Title IV), and Miscellaneous Provisions (Title V)." *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1172 (9th Cir. 1999). Plaintiff does not specify under which Title he is bringing his ADA claims; however, the only Title that appears applicable is Title II, which concerns public services.[5]

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Public entity" extends to state prisons and thus Title II applies to prisoners. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, (1998) ("State prisons fall squarely within the statutory definition of "public entity," which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'") (quoting 42 U.S.C. § 12131(1)(B)).

> To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability.

[5] Courts have rejected Title III claims in the prison context. *See Howze v. Orozco*, No. 2:16-CV-1738-JAM AC P, 2018 WL 4409294, at *4 (E.D. Cal. Sept. 17, 2018), *report and recommendation adopted*, 2018 WL 6504327 (E.D. Cal. Dec. 11, 2018) (construing Title III claim as a Title II claim because state prisons are public entities); *York v. Beard*, No. 1:14-CV-01234-LJO, 2015 WL 3488217, at *2 (E.D. Cal. June 2, 2015), *report and recommendation adopted*, 2015 WL 4557437 (E.D. Cal. July 27, 2015) ("The State of California and its agencies are public entities rather than private entities, and state prisons are not places of public accommodation.").

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

"The term "disability" means, with respect to an individual-- (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(A)-(C).

The ADA does not provide a basis to sue government officials in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA . . . ").

> Ordinarily, a plaintiff is not entitled to monetary damages against defendants in their official capacities. *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment does not bar ADA suits against state officials in their official capacities for injunctive relief or damages. *See Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792–93 (9th Cir. 2004).

*Bozeman v. Santoro*, No. 1:17-CV-01247-DAD-GSA (PC), 2019 WL 4273927, at *4 (E.D. Cal. Sept. 10, 2019).

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001) (footnote omitted). Deliberate indifference is the appropriate standard to apply in determining whether intentional discrimination occurred. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

**2. Claims**

With these standards in mind, the Court turns to Plaintiff's claims. Plaintiff's first and second claims are very similar. In his first claim, he alleges that he fell on his way to the urinal on the yard after his walker wheel became "stuck in a small ditch or gutter" next to the sidewalk and

Defendants Mejia, Martinez, and Wilson failed to activate their emergency device. (ECF No. 12, p. 3). In his second claim, he alleges that he fell after his walker wheel became caught on a large bulge in the blacktop in front of Building 1 and Defendant Pelafox failed to activate his emergency device. For both claims, Plaintiff generally alleges that Warden Phillips failed to make the living conditions safe for ADA inmates despite being "aware of the many complaints and work orders that [were] placed" as to the prison.

Plaintiff's complaint fails to state an ADA claim. Because Plaintiff requests monetary damages, he must show intentional discrimination on the part of each Defendant. However, he has failed to do so. Importantly, Plaintiff fails to offer sufficient facts indicating that any Defendant knew about the tripping hazards, or that he was likely to be injured, and then failed to act based on the risk. While the Court notes that Plaintiff accuses Warden Phillips of being generally aware of "many complaints" around the institution, he provides no facts demonstrating that Warden Phillips was aware of the hazards that Plaintiff encountered or even tripping risks generally. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 (9th Cir. 2021) ("To meet the high bar of deliberate indifference, a plaintiff must first show that the public entity was on notice of the need for an accommodation.").

Additionally, Plaintiff's assertion that he is required to have "access to all areas as afforded to the rest of the inmate population" is legally incorrect. (ECF No. 12, p. 5). Under the regulations promulgated by Title II of the ADA, public entities must "operate each service, program, and activity so that the service, program or activity, when viewed in its entirety, is readily accessible and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

> Meeting this standard does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." *Id.* § 35.150(a)(1). It also does not require structural changes to existing facilities, if "other methods, such as relocating services to different buildings, would be effective." *Cohen v. City of Culver City*, 754 F.3d 690, 696 (9th Cir. 2014); 28 C.F.R. § 35.150(b)(1). The regulation requires only that, "when viewed in its entirety," the program at issue be accessible.

*Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1182–83 (9th Cir. 2017) (footnote omitted).

Importantly, Plaintiff fails to provide facts as to how he was denied access to a service,

program, or activity. For example, Plaintiff does not state that he was able to access only one urinal, which required him to encounter the tripping hazard. Accordingly, the Court concludes that Plaintiff's first and second claims fail to state a violation of the ADA.

Plaintiff's third claim—alleging that Defendants Hicks and Cabellos failed to summon a transport vehicle with a safety ramp, which led to him falling—also appears to assert a claim under the ADA. However, Plaintiff indicates that Defendants' failure to grant his request to remove his ankle shackles—which "were not long enough to reach the ground" as he stepped out of the vehicle—was the actual cause of the fall. (ECF No. 12, p. 7). Importantly, Plaintiff fails to demonstrate that his disability was the reason behind the alleged discrimination he faced.

Moreover, Plaintiff fails to provide facts showing that either Defendant had knowledge that harm was substantially likely to occur based on the vehicle used and then failed to act upon that likelihood. By Plaintiff's own telling, both Defendants tried to help him and were in fact successful in loading him into the vehicle. While Plaintiff ultimately did fall during his exit from the vehicle, this is because the shackles were not long enough for him to step to the ground, and there is nothing to indicate deliberate conduct by either Defendant. And even assuming such conduct was negligent, this is insufficient to establish a deliberate indifference claim. *See Bozeman*, 2019 WL 4273927, at *4 ("The ADA plaintiff must both identify specific reasonable and necessary accommodations that the state failed to provide and show that the defendant's failure to act was a result of conduct that is more than negligent, and involves an element of deliberateness.") (citation and quotation marks omitted).

**C. Deliberate Indifference**

**1. Legal standards**

All of Plaintiff's claims appear to argue that his Eighth Amendment rights were violated, either because he was imprisoned in unsafe conditions or because his serious medical needs went untreated.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "In prohibiting cruel and unusual punishment, the Eighth Amendment imposes a duty on prison

officials to 'provide humane conditions of confinement . . . and [to] take reasonable measures to guarantee the safety of the inmates.'" *Denney v. Redwood City*, No. C 95-2148 CAL, 1995 WL 494592, at *1 (N.D. Cal. Aug. 7, 1995) (quoting *Farmer*, 511 U.S. at 832). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (noting that deliberate indifference to a prisoner's serious illness or injury violates the Eighth Amendment).

"Whether one characterizes the treatment received by [Plaintiff] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard . . . ." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (quoting *LaFaut v. Smith*, 834 F.2d 389, 391–92 (4th Cir. 1987)). Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (citation and internal quotation marks omitted). Second, "a prison official must have a sufficiently culpable state of mind," which for purposes of this case, "is one of deliberate indifference." *Id.* (citations and internal quotation marks omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. "The circumstances, nature, and duration of [the Eighth Amendment claim] must be considered in determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish deliberate indifference. *Farmer*, 511 U.S. at 835.

**2. Claims**

The Court begins with Plaintiff's first claim— that he fell on his way to the urinal on the yard after his walker wheel became "stuck in a small ditch or gutter" next to the sidewalk and Defendants Mejia, Martinez, and Wilson failed to activate their emergency device and Warden Phillips failed to make the yard safe. To the extent that Plaintiff alleges that any Defendant violated his rights by failing to keep him safe from the tripping hazard, he provides no specific

facts indicating that any Defendant even knew of the "small ditch or gutter" and then also acted with deliberate indifference to the risk of harm it presented to Plaintiff.[6] Furthermore, there is no evidence that it was left there intentionally, rather than due to negligence on the part of Defendants.

Likewise, to the extent that Plaintiff alleges that Defendants Mejia, Martinez, and Wilson failed to appropriately summon him medical care, the Court concludes that he fails to establish deliberate indifference by any Defendant. While Plaintiff states that Defendants Mejia, Martinez, and Wilson knew that he fell, he does not allege that they were subjectively aware of a serious risk of harm and disregarded the risk. Rather, according to Plaintiff, his fellow inmates came to his aid, taking him "to medical."

The Court turns to Plaintiff's second claim—that he fell after his walker wheel got caught on a bulge in the blacktop and that Defendant Pelafox, who is not a medical professional, improperly removed the walker from under him causing him pain. He also alleges that Warden Phillips was aware of unspecified complaints regarding the prison.

However, Plaintiff does not allege that Defendant Pelafox or Warden Phillips specifically knew of the bulge or fail to correct it. Moreover, there is no evidence that the bulge in the blacktop was left there intentionally, rather than due to negligence on the part of Defendants.

Likewise, as to the allegation that Pelafox improperly removed the chair from under Plaintiff, causing him pain, as the Court explained in its initial screening order, there is nothing to indicate that these circumstances rise to the level of deliberate indifference. Notably, there is nothing to show that Pelafox would have recognized an excessive risk to Plaintiff's health by removing the chair from under him or that he disregarded any risk to Plaintiff's health by removing the chair in a wanton manner. Rather, the fact that Plaintiff fell and Pelafox then removed the chair from under him indicates that Pelafox was attempting to help Plaintiff, albeit

---

[6] The Court recognizes that the complaint generally states that Warden Phillips is aware of "many complaints and work orders" regarding the prison; however, it does not find such facts sufficient to establish deliberate indifference. *Cf. Coleman v. Frauenheim*, No. 1:17-CV-01276-DAD-BAM (PC), 2018 WL 2463855, at *3 (E.D. Cal. June 1, 2018) (noting that "federal courts have repeatedly rejected Eighth Amendment slip and fall claims" and "in order state a cognizable claim for relief, there must be a confluence of exacerbating conditions such that the slippery floor posed a serious, unavoidable threat to plaintiff's safety").

potentially in a negligent way. However, negligence does not rise to the level of deliberate indifference.

The Court turns to Plaintiff's third claim—that he fell after Defendants Hicks and Cabellos failed to get him a vehicle with the necessary safety ramp for his walker. In his initial complaint, Plaintiff stated that he suffered bruising and joint damage. (ECF No. 1, p. 5). The Court noted that such allegations were insufficient to establish a serious injury but granted Plaintiff leave to amend. (ECF No. 9, p. 9) (citing *Vilchis v. City of Bakersfield*, No. 1:10-CV-00893 LJO, 2012 WL 113747, at *12 (E.D. Cal. Jan. 13, 2012) ("Even assuming the truth of Plaintiff's assertions that he had visible injuries to the head and face, the evidence in the record describes those injuries to be abrasions and contusions, with some associated bleeding. This does not rise to the level of a 'serious medical need,' for purposes of the Eighth Amendment.")). But rather than allege facts establishing a serious injury in his amended complaint, Plaintiff only generally states that he suffered "more pain and more injuries," which is insufficient to state a claim. (ECF No. 12, p. 7); *see Hernandez v. California Dep't of Corr. & Rehab.*, No. 1:23-CV-00394, 2023 WL 6283191, at *3 (E.D. Cal. Sept. 26, 2023) (concluding at screening that a plaintiff failed to state a claim by not identifying a sufficiently serious injury).

Moreover, there is nothing to indicate that either Hicks or Cabellos recognized and then disregarded an excessive risk to Plaintiff by not obtaining a vehicle with a lift. Rather, by Plaintiff's telling, both Defendants attempted to help him out of the vehicle. Cabellos held Plaintiff's walker while Plaintiff got out. While Plaintiff claims that his ankle shackles were not long enough to reach the ground and Hicks allowed him to fall by stepping out of the way after he began to fall, there is nothing to indicate that Hicks caused or failed to prevent the fall in a manner amounting to deliberate indifference.

In his fourth and fifth claims, Plaintiff sues Defendants Cortez and Nurse Jane Doe for the first time. However, his claims are based on substantially the same facts as contained in his initial complaint.

As to Nurse Cortez, Plaintiff asserts that she failed to conduct an adequate medical examination of him after he fell on the yard on his way to the urinal as described in his first claim. However, despite stating that he "injured [his] shoulder and [his] side," Plaintiff provides no facts

indicating that his injuries were sufficiently serious to implicate an Eighth Amendment claim, let alone that Nurse Cortez recognized and disregarded a serious risk of harm in her evaluation of him.

Likewise, as to Nurse Jane Doe, Plaintiff claims that she failed to properly examine him after he was "dropped" by Defendants Hicks and Cabellos. But besides generally indicating that he was injured, Plaintiff does not explain how the injury constituted a serious medical need and how Nurse Jane Doe recognized and disregarded such a need.

For the reasons given above, the Court concludes that Plaintiff fails to state any Eighth Amendment claim.

**IV. CONCLUSION, ORDER, AND RECOMMENDATIONS**

While Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should freely be given when justice so requires, a court "may decline to grant such leave where there is "any *apparent or declared reason*" for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 772 (9th Cir. 1991) (quoting *Foman v. Davis*, 371 U.S. 178 (1962) (emphasis added in original).

While Plaintiff has added Defendants and legal theories, his factual allegations remain materially the same. The Court previously considered Plaintiff's allegations, provided him with applicable Eighth Amendment legal standards, and gave him leave to amend. And although Plaintiff has filed a late amended complaint, the Court has considered it. Based on these circumstances, the Court concludes that further leave to amend is unwarranted.

Based on the forgoing, IT IS ORDERED as follows:

1. The Clerk of Court is directed to add Defendants (1) Warden Phillips; (2) Nurse Cortez; and (3) Nurse Jane Doe to the docket.
2. The Court's March 7, 2024 findings and recommendations (ECF No. 11) are vacated.

Further, IT IS RECOMMENDED as follows:

1. This action be dismissed, without further leave to amend, for failure to state a claim.
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 10, 2024**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE